IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRAILER SOURCE, INC., ) | |
|     Debtor, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-00148 |
| ) | Judge Trauger |
| HYUNDAI TRANSLEAD, INC., ) | |
|     Creditor. ) | |

## MEMORANDUM

Pending before the court is the Motion to Withdraw the Reference to the Bankruptcy Court and to Modify the Automatic Stay filed by Hyundai Translead, Inc. ("Hyundai") (Docket No. 1), the response filed by Jackson Truck & Trailer Repair, Inc., James A. Harrell, and Raleigh J. Williams (Docket No. 4), and Hyundai's reply (Docket No. 9). For the reasons discussed below, the motion will be granted in part and denied in part.

## BACKGROUND

The parties have traveled a circuitous road to arrive at the present procedural posture of their eight-year-long dispute.[1] Although filed under a new case number, this motion relates to *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc., et al.*, Case No. 3:04-cv-0582, which is currently pending before this court. Hyundai initially filed that suit in an individual capacity but has since substituted itself, in a derivative capacity on behalf of the Trailer Source,

---

[1] Unless otherwise noted, the facts are drawn from the parties' submissions and the court's previous memoranda in Case No. 3:04-cv-0582.

1

Inc. bankruptcy estate, as plaintiff. With the instant motion, Hyundai essentially seeks to revive its individual claims.

So, once again, the court will recite the history of this dispute. From 2000 to 2002, Hyundai, a manufacturer of semi-truck trailers, sold trailers to Southern Trailer and Equipment Sales, Inc. ("Southern Trailer"), a dealership in which Harrell and Williams owned a controlling interest. Harrell and Williams also owned controlling interests in two other trailer dealerships, Jackson Truck & Trailer Repair, Inc. ("JT&T") and Trailer Source, Inc. ("Trailer Source").[2]

In 2002, Hyundai filed suit in the Superior Court of San Diego County, California against the three dealerships, Harrell, Williams, and Trailer Source CFO Mark Lazarus, alleging that Hyundai had delivered more than $44 million in trailers to Southern Trailer but had received only $26 million in payment. Hyundai alleged that Southern Trailer had fraudulently conveyed trailers, which otherwise could have been used to settle its debt to Hyundai, to the other dealerships. In August 2002, Hyundai settled with all of the defendants in the California action.

Under the resulting Settlement and Security Agreement (the "Settlement Agreement"), Southern Trailer and Trailer Source agreed to pay $21 million to Hyundai in installments. The agreement included a broad release of claims, in which Hyundai agreed to "release, relieve and discharge" the JT&T parties from:

> any and all claims, demands, actions, suits, causes of action, obligations, debts, costs, expenses, damages, and liabilities of any kind or nature, in law equity or otherwise, whether known or unknown, suspected or unsuspected, fixed or contingent . . . arising out of any acts or omissions occurring prior to the execution of this

---

[2] The court will refer to JT&T, Harrell, and Williams collectively as the "JT&T parties."

> Settlement Agreement, including but not limited to the acts and
> omissions which form the subject matter of the claims asserted (or
> which could be asserted) in the [California] Action.

(Case No. 3:04-0582, Docket No. 115 at 13.)

In October 2003, Trailer Source defaulted on its payment obligations under the Settlement Agreement. Proceedings in this court began on June 30, 2004, when Hyundai filed a complaint against JT&T, Harrell, Williams, Lazarus, and JT&T shareholder Jeffrey Davis. Hyundai alleged that the defendants had fraudulently transferred Trailer Source's assets to avoid paying the company's debt. Hyundai asserted claims for fraudulent transfer, conversion, fraudulent misrepresentation, negligent misrepresentation, and successor liability. It then amended its complaint to add claims for rescission and reformation of the Settlement Agreement.

After the parties had fully briefed the defendants' ensuing Motion for Judgment on the Pleadings, Hyundai filed an involuntary Chapter 7 bankruptcy petition against Trailer Source. The bankruptcy court entered an order of relief on February 14, 2005. Hyundai filed a Notice of Automatic Stay in this court, and the dispute moved to bankruptcy court under the caption *In re Trailer Source, Inc.*, No. 3:05-bk-00148 (Bankr. M.D. Tenn.).

The bankruptcy trustee refused to pursue Hyundai's fraudulent transfer claims, so Hyundai moved for a grant of derivative standing to pursue the claims itself on behalf of the bankruptcy estate. The bankruptcy court denied the motion. Subsequently, the trustee settled all potential fraudulent transfer claims with JT&T for $50,000, and the bankruptcy court approved the settlement.

Hyundai appealed, and on March 30, 2007, this court reversed the bankruptcy court.

3

This court granted derivative standing to Hyundai, denied approval of the trustee's settlement, and lifted the automatic stay on Hyundai's individual claims. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, No. 3:06-0573, 2007 U.S. Dist. LEXIS 23816 (M.D. Tenn. Mar. 30, 2007). Hyundai filed a motion to amend its complaint to reflect its derivative standing. The defendants, however, appealed the reversal of the bankruptcy court, and the court entered a second stay while the appeal was pending.

On February 6, 2009, the Sixth Circuit upheld the grant of derivative standing to Hyundai. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (*In re Trailer Source, Inc.*), 555 F.3d 231, 246 (6th Cir. 2009). It also reversed this court's decision to lift the automatic stay:

> Because we affirm the district court's grant of derivative standing to Hyundai, we conclude that relief from the automatic stay is not necessary for the adequate protection of Hyundai's interests. Hyundai requested that the bankruptcy court lift the automatic stay so that it could return to the district court to pursue its action against the JT&T parties to recover the assets allegedly fraudulently transferred from Trailer Source. . . .
>
> Although Hyundai argues on appeal that we should affirm the district court's order granting relief from the stay, Hyundai also appears to acknowledge that this would be unnecessary if it is granted derivative standing. Indeed, the bankruptcy court's denial of derivative standing was the only reason that Hyundai later requested relief from the automatic stay. . . .
>
> Hyundai sought to have the stay lifted so that it could bring fraudulent-transfer claims against the JT&T parties to recover assets allegedly transferred from Trailer Source. That is precisely what it will do now that it has been granted derivative standing, only it will do so indirectly, on behalf of the estate, rather than directly. Because Hyundai will now be able to pursue its fraudulent-transfer claims against the JT&T parties derivatively on

4

> behalf of the estate, relief from the stay is not necessary to provide
> 'adequate protection' of Hyundai's interests. Accordingly, we
> reverse the district court's grant of stay relief.

*Id.* at 245-46.

On July 13, 2009, Hyundai filed its Second Amended Complaint, which substituted itself, in a derivative capacity for the bankruptcy estate, as plaintiff. The new complaint also added claims and made additional allegations. On the JT&T parties' motion, the court dismissed certain claims that exceeded the scope of Hyundai's derivative standing. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.*, 419 B.R. 749 (M.D. Tenn. 2009).

In addition to answering the Second Amended Complaint, the JT&T parties have asserted a counterclaim, which is substantially similar to a counterclaim they filed in 2004 in response to Hyundai's initial claims. In their counterclaim, the JT&T parties allege that Hyundai's pursuit of its individual and derivative claims constitute a breach of the Settlement Agreement's broad release. They seek to recover attorneys' fees pursuant to a clause in that agreement providing that:

> In the event of any proceeding brought to enforce any provision of
> this Settlement Agreement or to enforce any remedy available
> upon default under this Settlement Agreement, the prevailing party
> shall be entitled to recover its or his reasonable attorneys' fees and
> costs as a part of any award or judgment in such proceeding.

(Case No. 3:04-0582, Docket No. 115 at 14.)

Hyundai moved to dismiss the counterclaim, arguing that (1) a counterclaim against Hyundai, individually, was improper because Hyundai, individually, was no longer the plaintiff, and (2) it was fundamentally unfair for the JT&T parties to pursue a counterclaim when the

5

automatic stay prevented Hyundai from pursuing its individual claims.  The court denied the motion, because neither argument provided a proper basis for dismissal of the counterclaim. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.*, No. 3:04-cv-0582, 2010 U.S. Dist. LEXIS 5554, at *20-23 (M.D. Tenn. Jan. 25, 2010).

Hyundai has since filed an answer to the JT&T parties' counterclaim.  Hyundai has also filed, as an exhibit to its answer, a set of proposed counterclaims.  Hyundai now seeks to incorporate these counterclaims into its answer and to pursue the counterclaims.  These claims, which Hyundai is asserting in an individual capacity and which are substantially similar to its previous individual claims, are for: (1) conversion; (2) recovery of money had and received and repayment of sums advanced; (3) recovery of illegal distributions to shareholders of Trailer Source; (4) recovery of payment for goods sold and delivered; and (5) civil conspiracy.

Hyundai's counterclaims are based on the defendants' alleged scheme to transfer Trailer Source's cash and assets to themselves.  The transfers allegedly took place between 2000 and 2003, and all of Hyundai's specific allegations involve transfers that occurred before the execution of the 2002 Settlement Agreement.  This is the same conduct that provided the basis for Hyundai's original individual claims and for the now-pending derivative claims.

## ANALYSIS

Hyundai has filed a Motion to Withdraw the Reference to the Bankruptcy Court and to Modify the Automatic Stay, pursuant to 28 U.S.C. § 157(d) and 11 U.S.C. § 362(d).

### I.     Withdrawal of Reference to the Bankruptcy Court

First, the court must decide whether it is appropriate to withdraw the reference to the

6

bankruptcy court of Hyundai's Motion to Modify the Automatic Stay.

Pursuant to 28 U.S.C. § 157(a), the District Court for the Middle District of Tennessee has adopted a standing order referring bankruptcy proceedings to the bankruptcy court for this district. Section 157(d) provides that a district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

Although § 157(d) does not define "cause," courts have held that a litigant faces a high bar in withdrawing a matter from the bankruptcy court. *Nukote Int'l, Inc. v. Office Depot, Inc.*, No. 3:09-0921, 2009 U.S. Dist. LEXIS 106702, at *8 (M.D. Tenn. Nov. 16, 2009). There is little Sixth Circuit law on the issue, but courts generally consider several factors:

> (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors, such as expediency of the bankruptcy process and whether there has been a jury trial demand.

*Id.* at *9-10 (quotation marks and citation omitted). Importantly, "the district court retains ample discretion in making the decision to withdraw the reference." *Id.* at *9.

Given the unique procedural posture of this case, it is not necessary to examine and discuss each of these factors. Hyundai seeks relief from the automatic stay so that it can essentially reassert its original individual claims, which have been the subject of years of litigation in this court and the Sixth Circuit. Indeed, for the past three-and-one-half years, the dispute between these parties has occurred outside of the bankruptcy court. This court has undertaken to manage the claims between Hyundai and the JT&T parties, and the Motion to

7

Modify the Automatic Stay will directly impact that management. Given this court's intimate familiarity with the circumstances of this case, as well as the effect the motion will potentially have on the ongoing derivative-claim proceedings, judicial economy dictates that this court should decide Hyundai's motion. This alone provides cause to withdraw the reference.

Accordingly, the court will exercise its discretion to withdraw the reference and to decide Hyundai's Motion to Modify the Automatic Stay.

## II. Modification of the Automatic Stay

Hyundai argues that the automatic stay must be lifted because, "[i]f Hyundai individually is to be brought back into the case, in all fairness, it must be entitled to defend itself, including the assertion of compulsory counterclaims."[3] (Docket No. 9 at 6.)

---

[3] It is somewhat unusual for a plaintiff to bring a counterclaim in reply to a defendant's counterclaim. Although it does not appear that the Sixth Circuit has addressed this practice, Moore's Federal Practice states that it is allowed. 3 *Moore's Federal Practice* § 13.44 (3d. ed.). Other courts are divided. *See, e.g.*, *Feed Mgmt. Sys. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007) (holding that "a counterclaim-in-reply [is] a proper pleading if it is a compulsory reply to a permissive counterclaim"); *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, NO. 05-CV-73615, 2007 U.S. Dist. LEXIS 29571, at *4-9 ( E.D. Mich. Apr. 20, 2007) (holding that all counterclaims-in-reply, whether permissive or compulsory, are allowed); *Brooks v. Bates*, 781 F. Supp. 202, 207 (S.D.N.Y. 1991) (holding that the Federal Rules of Civil Procedure do not permit counterclaims to counterclaims).

This court agrees with the view that nothing in the Federal Rules of Civil Procedure prevents a plaintiff from bringing a counterclaim-in-reply. Rule 13(a)(1) describes situations when "[a] pleading must state" counterclaims that are compulsory, and Rule 13(b) provides that "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Rule 7(a), which lists the types of pleadings a party may file, permits an "answer to a counterclaim." "In other words, by the plain language of the rules, a counterclaim may be raised in a pleading, and a reply to a counterclaim is a permissible pleading; hence, a counterclaim may be asserted in a reply to a counterclaim." *Power Tools*, 2007 U.S. Dist. LEXIS 29571 at *6.

In any event, if Hyundai were not permitted to file counterclaims, the court could simply allow Hyundai to amend its complaint under Rule 15(a)(2) to add its individual claims.

8

Under 11 U.S.C. § 362(a), actions relating to the property of a bankruptcy estate are automatically stayed upon the filing of a bankruptcy petition. Section 362(d) allows a court to modify the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." Hyundai argues that courts frequently lift the automatic stay to permit parties to pursue counterclaims. It relies on *In re Pro Football Weekly, Inc.*, 60 B.R. 824 (N.D. Ill. 1986), which laid out a three-pronged test to determine whether a court should modify the automatic stay.

Regardless of this test, the resolution of Hyundai's motion is controlled by the Sixth Circuit's decision in *In re Trailer Source*. The Sixth Circuit explicitly reversed this court's decision to lift the stay on Hyundai's individual claims, reasoning that, "[b]ecause Hyundai will now be able to pursue its fraudulent-transfer claims against the JT&T parties derivatively on behalf of the estate, relief from the stay is not necessary to provide 'adequate protection' of Hyundai's interests." 555 F.3d at 246. This reasoning still applies with full force.

The relevant circumstances of this litigation have not changed since the Sixth Circuit rendered its decision. First, the court is not persuaded by Hyundai's claim that its "clear entitlement to relief from stay was not considered by the Sixth Circuit." (Docket No. 9 at 8.) The Sixth Circuit fully analyzed the stay issue. *See* 555 F.3d at 245-46. Second, Hyundai's argument that the case has changed because it "now involves direct claims against Hyundai, in its individual capacity," (*id.*), is unconvincing. The direct counterclaim against Hyundai, which was first filed by the JT&T parties in 2004, already existed when the Sixth Circuit heard the appeal.

9

The court finds that the best course of action is to deem Hyundai's counterclaims to be incorporated into its answer but to stay all proceedings on those counterclaims. This will essentially restore the case, as it relates to Hyundai as an individual plaintiff, to the situation that existed immediately after the Sixth Circuit's ruling – Hyundai will have individual claims against the JT&T parties that are stayed, and the JT&T parties will have a counterclaim against Hyundai.[4] This also resolves Hyundai's concern that it must file its counterclaims because they are compulsory under Federal Rule of Civil Procedure 13.

## CONCLUSION

For all of the reasons discussed above, Hyundai's Motion to Withdraw the Reference to the Bankruptcy Court and to Modify the Automatic Stay will be granted in part and denied in part. The court will deem Hyundai's proposed counterclaims in Case No. 3:04-cv-0582 to be incorporated into its answer to the JT&T parties' counterclaim, but the court will stay

---

[4] Hyundai's primary concern, in both the instant motion and its previous Motion to Dismiss, seems to be that it is unfair for the JT&T parties' counterclaim to go forward while Hyundai's individual claims are stayed. But, practically speaking, the JT&T parties' counterclaim cannot be adjudicated until Hyundai's individual claims are resolved.

The JT&T parties' counterclaim is premised on the Settlement Agreement's release and attorneys' fees clauses. The fees clause provides that, in "any proceeding brought to enforce any provision of this Settlement Agreement . . . , the prevailing party shall be entitled to recover its or his reasonable attorneys' fees." (Case No. 3:04-0582, Docket No. 115 at 14.) Thus, there are two prerequisites to recovery: (1) a proceeding brought to enforce the Settlement Agreement, and (2) a prevailing party.

Here, the "proceeding[s] brought to enforce" the Settlement Agreement are the JT&T parties' various motions and arguments that Hyundai's individual claims must be dismissed because they are barred by the Settlement Agreement. But the JT&T parties have not yet "prevailed" on these arguments – no court has ruled that Hyundai's individual claims are invalid or that they must be dismissed. It seems clear that, as long as Hyundai's individual claims remain stayed, no party can "prevail," and the JT&T parties cannot recover as to those claims. This precludes the unfairness that Hyundai fears.

10

proceedings on Hyundai's counterclaims.

      An appropriate order will enter.

                                                  _____
                                                  ALETA A. TRAUGER
                                                  United States District Judge